LYNCH CONGER MCLANE, LLP
JASON CONGER* OSB No. 054210
MICHAEL R. McLANE OSB No. 904435
BEN BECKER OSB No. 103358
1567 S.W. Chandler Ave., Ste. 204
Bend, OR  97702
Telephone: (541) 383-5857
Facsimile:  (541) 383-3968
jconger@lynchconger.com
mmclane@lynchconger.com
bbecker@lynchconger.com

*Application for admission to be submitted

BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK**
STEPHEN M. DUVERNAY**
400 Capitol Mall, Ste. 2530
Sacramento, CA  95814
Telephone: (916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

**Pro hac vice *applications to be submitted*

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| ADDISON BARNES,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>LIBERTY HIGH SCHOOL; HILLSBORO SCHOOL DISTRICT; and GREG TIMMONS, in his official capacity as Principal, Liberty High School,<br><br>　　　　　　Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF** |

Plaintiff Addison Barnes complains of Defendants and alleges:

**INTRODUCTION**

1. This is a First Amendment challenge to Liberty High School's suppression of a student's political speech based on other students' and teachers' alleged discomfort with the ideas and message that Plaintiff conveyed.

2. Plaintiff Addison Barnes engaged in a respectful, silent, and peaceful expression of his political views by wearing a t-shirt supporting the immigration and homeland security policies of President Donald J. Trump to school. Specifically, the shirt includes the words "Donald J. Trump Border Wall Construction Co.," with the phrase "The Wall Just Got 10 Feet Taller" in quotes. The idea of a border wall, of course, has been a pillar of the President's policy agenda since he first announced his presidential campaign; indeed, the President spoke the very words quoted in the shirt at a presidential primary debate in February 2016. And the idea of a border wall remains a subject of widespread political debate throughout the country.

3. Earlier this semester, Barnes wore the border wall shirt to his first-period "People and Politics" class, where the topic of discussion that day was immigration. During class, Assistant Principal Amanda Ryan-Fear removed Barnes from the classroom and directed him to cover the shirt because, she claimed, at least one other student and a teacher had claimed that the shirt "offended" them. Barnes complied by covering the shirt and returning to the classroom. A few minutes later, Barnes decided this wasn't right—he believed that the First Amendment protected his right to peacefully express his political views in school—so he uncovered the shirt. Later in the period, Ryan-Fear returned and saw Barnes was no longer covering the shirt. She sent a security guard to remove him from class and take him to her office—where he was threatened with suspension for "defiance." School officials reiterated that Barnes could not wear his shirt because other students felt "offended" by the ideas or message it conveyed. Given the choice to cover his shirt or go home for the rest of the day, Barnes chose to go home—and school officials treated his absence as a suspension.

4. This was unconstitutional. The First Amendment protects students' right to speak on political or societal issues—including the right to express what school officials may consider

unpopular or controversial opinions, or viewpoints that might make other students uncomfortable. Barnes' shirt did not substantially disrupt or materially interfere with the work of the school or the rights of his fellow students. The shirt did not promote or advocate illegal activity; it contained no violent or offensive imagery; nothing on it was obscene, vulgar, or profane. Through his shirt, Barnes sought to convey his views on a national debate about a serious political and societal issue. It was pure political speech, which, "of course, is 'at the core of what the First Amendment is designed to protect.'" *Morse v. Frederick*, 551 U.S. 393, 403 (2007) (quoting *Virginia v. Black*, 538 U.S. 343, 365 (2003)). And yet Barnes was prevented from wearing his shirt based on other students' and even a teacher's alleged discomfort with the message or ideas they believed it conveyed.

5. For nearly half a century, it has been the "unmistakable holding" of the Supreme Court that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). In *Tinker*, the Court instructed that school officials may not suppress student speech based on the "mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint" or "an urgent wish to avoid the controversy which might result from the expression." *Id.* at 509, 510. Accordingly, "student expression may not be suppressed unless school officials reasonably conclude" that the expression "will materially and substantially disrupt the work and discipline of the school." *Morse*, 551 U.S. at 403 (citing *Tinker*, 393 U.S. at 513). On the morning plaintiff wore the shirt, his classroom environment experienced no disruption whatsoever—that is, until the assistant principal and then a security guard came in the administration's effort to shield other students from seeing the shirt.

6. By elevating the feelings of other students and a teacher over Barnes' free speech rights, Defendants' actions violate the "bedrock First Amendment principle" that "[s]peech may not be banned on the ground that it expresses ideas that offend." *Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017). *See Bachellar v. Maryland*, 397 U.S. 564, 567 (1970) ("[I]t is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers, or simply because bystanders object to

peaceful and orderly demonstrations."). *Tinker* makes clear that, even in the classroom, the First Amendment requires that the balance be struck in favor of free expression, even though the ideas may make others uncomfortable:

> [I]n our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression. Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunchroom, or on the campus, that deviates from the views of another person may start an argument or cause a disturbance. But our Constitution says we must take this risk . . . .

393 U.S. at 508.

7. Such is the "hazardous freedom" and "openness" that "is the basis of our national strength and of the independence and vigor of Americans who grow up and live in this relatively permissive, often disputatious, society." *Id.* Yet Defendants failed to heed *Tinker*'s most important command, and instead give other students (and teachers and school administrators) a heckler's veto over ideas that they subjectively find "unpleasant," "offensive," or "threatening." Precisely because "the classroom is peculiarly the 'marketplace of ideas,'" *Tinker*, 393 U.S. at 512, "the remedy to be applied is more speech, not enforced silence." *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring). "Even in high school, a rule that permits only one point of view to be expressed is less likely to produce correct answers than the open discussion of countervailing views." *Morse*, 551 U.S. at 448 (Stevens, J., dissenting).

8. The unconstitutionality of the school's actions is strongly confirmed by the fact that the school allows—even encourages and endorses—expression of different viewpoints on the subjects of immigration and national security. One of Barnes' teachers, for example, prominently displayed a sign in in the front of the classroom stating "Sanctuary City, Welcome Home." (Never mind that many students, including Barnes, may feel that expression of these ideas "offends" and "threatens" them, or makes them "uncomfortable.") By muffling one side of the debate while allowing the other side to magnify their voice with a megaphone, Defendants' actions constitute viewpoint-based discrimination. *Tinker*, 393 U.S. at 511 ("[T]he prohibition of expression of one particular opinion . . . is not constitutionally permissible."). *See also Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 828–29 (1995) (regulating speech based on "the specific

motivating ideology or the opinion or perspective of the speaker" is a "blatant" and "egregious form of content discrimination").

9. Because Defendants have censored Plaintiff's speech commenting on an important political and societal issue, without any threat of a substantial disruption, they have violated his First Amendment rights.

**JURISDICTION AND VENUE**

10. This case raises questions under the First Amendment and 42 U.S.C. § 1983. This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. § 1331.

11. Venue is proper under 28 U.S.C. § 1391(b).

**THE PARTIES**

12. Plaintiff Addison Barnes is a twelfth-grade student at Liberty High School in Hillsboro, Oregon.

13. Defendant Liberty High School is a school operated by and located within the Hillsboro School District. The school's campus is located at 7445 NE Wagon Drive, Hillsboro, Oregon.

14. Defendant Hillsboro School District is a public entity established and organized under, and pursuant to, the laws of Oregon. The district maintains its administrative office at 3083 NE 49th Place, Hillsboro, Oregon.

15. Defendant Greg Timmons is the Principal of Liberty High School. He is responsible for implementing and enforcing the District's and School's polices. Timmons is sued in his official capacity.

**GENERAL ALLEGATIONS**

**Defendants' Censorship of Plaintiff's T-Shirt Infringes His
First Amendment Right To Express Political Views.**

16. Liberty High School is subject to the policies adopted by the Hillsboro School District. The District has adopted Standards of Student Conduct, which "contain[] a positive set of guidelines and rules to ensure success and safety for each student, parent / guardian, staff, and community member." Hillsboro Sch. Dist., *Standards of Student Conduct 2017–18* 2 (2017). A

true and correct copy of the relevant portions of the Standards of Student Conduct is attached as Exhibit 1.

17. The District's *Standards* explain that "[s]tudents have a general right to freedom of expression within the school system," and "[g]enerally, students and student organizations are free to examine and discuss questions of interest to them, and to express opinions publicly and privately within the school system, provided such examination and expression is fair and responsible, and is not disruptive to other individuals or to the educational process."[1] *Standards* at 5. Further, "[s]tudents may support causes by orderly means that do not disrupt other individuals or the operation of the school. In the classroom, students are free to examine views offered in any course of study, provided such examination is expressed in a responsible manner." *Id.*

18. The *Standards* also set forth general dress and grooming restrictions. Among these "general guidelines," the District prohibits "[c]lothing decorated or marked with illustrations, words, or phrases that are disruptive or potentially disruptive, and/or that promote superiority of one group over another . . . ." *Standards* at 22. The *Standards* warn that "[w]hen dress or grooming clearly disrupts learning or presents a health or safety hazard, the student will be required to change attire prior to returning to class. Such activity may result in serious disciplinary action." *Id.* at 23.

19. On January 19, 2018, Barnes was subject to discipline for wearing a t-shirt supporting the immigration and homeland security policies of President Donald J. Trump. Specifically, the shirt includes the words "Donald J. Trump Border Wall Construction Co.," with the phrase "The Wall Just Got 10 Feet Taller" in quotes. A picture of the shirt is attached as Exhibit 2. One of the central questions in the 2016 presidential campaign was whether and to what extent the United States should build a wall on its southern border, and it remains a subject of intense national debate today. Variations on the language quoted in plaintiff's shirt became a fixture during the campaign after former President of Mexico Vicente Fox stated during a February

---

[1] The *Standards* restate the District's formal policy on freedom of expression, adopted by the Hillsboro School District Board of Directors. Hillsboro Sch. Dist. Policy IB, *Freedom of Expression*, online at https://bit.ly/2rPzw9i.

2016 interview that he was "not going to pay for that fucking wall."  Rafa Fernandez De Castro, *Former Mexican President to Donald Trump: 'I'm not going to pay for that fucking wall'*, Fusion (Feb. 25, 2016), online at https://bit.ly/2K1WdOg.  When asked about President Fox's statement later that day at the tenth Republican Party presidential primary debate, then-candidate Trump responded, "[t]he wall just got 10 feet taller, believe me."  Tim Hains, *Trump Responds To Mexican Ex-President: "The Wall Just Got Ten Feet Taller"*, RealClearPolitics (Feb. 25, 2016), online at https://bit.ly/2ImKg8r.

20. During his first-period class on "People and Politics"—which that day was discussing immigration—Assistant Principal Amanda Ryan-Fear removed Barnes from the classroom and directed him to cover the shirt because at least one other student and a teacher had allegedly claimed that the shirt "offended" them.  Ryan-Fear told Barnes that he could be suspended if he did not comply.  Barnes complied by covering the shirt and returning to the classroom.  A few minutes later, Barnes decided this wasn't right—he believed that the First Amendment protected his right to peacefully express his political views in school—so he uncovered the shirt.

21. Later in the period, Ryan-Fear returned and saw Barnes was again wearing the shirt.  She sent a security guard to remove him from class and take him to her office.  Ryan-Fear told Barnes he could be suspended for up to ten days for "defiance."  School officials reiterated that Barnes could not wear his shirt because other students felt "offended" or "threatened" by the ideas or message it conveyed.  Barnes was given the choice to either cover his shirt or go home for the rest of the day.  He chose to go home.

22. The following Monday, Barnes and his father had a meeting with Principal Timmons and Assistant Principal Ryan-Fear about the incident with the border wall shirt.  At this meeting Barnes learned for the first time that by choosing to go home on Friday instead of covering his shirt, the school had elected to treat his absence as a suspension.  Though the school later rescinded this suspension, school officials made clear that Barnes would be subject to further discipline, including suspension, if he wore the border wall shirt to school again.  The administrators also claimed for the first time that the students and teacher who had allegedly

claimed previously to feel "offended" by the shirt had, rather, felt "threatened" by it. The bottom-line message conveyed from the administrators was that the "feelings" of other students and teachers outweighed Barnes' right to express his political beliefs.

23. Defendants' hostility to Barnes' political beliefs has persisted. Last month, one of Barnes' classmates, Isaiah Espinosa, was making a documentary on the First Amendment and free speech in the school. In the course of his film, Espinosa interviewed Barnes, who wore his border wall shirt during the interview. (Barnes put on the shirt for the purpose of the interview, and took it off when Espinosa finished filming.) Espinosa submitted the film to his teacher. After reviewing the film, Espinosa's teacher and the school administration directed him to blur or obscure the content of the border wall shirt before it could be uploaded to the school's online learning platform.

24. Except for wearing the shirt for Espinosa's documentary for the few minutes of his interview, Barnes has not worn the border wall shirt to school since he was disciplined in January. Barnes wants to wear the shirt to school again, but has refrained from doing so because he is afraid that he will be subject to further discipline from the school, including suspension, based on the administration's prior threats.

25. Defendants' actions censoring Barnes' political speech violate his First Amendment rights. Barnes sought to engage in "a silent, passive expression" commenting on a political and societal issue, which was "unaccompanied by any disorder or disturbance" by him. *Tinker*, 393 U.S. at 508. Such "pure speech . . . is entitled to comprehensive protection under the First Amendment," even in the school environment. *Id.* at 505–06.

26. Preserving students' freedom of speech and expression is an essential component of the broader public educational mission. "[E]ducation has a fundamental role in maintaining the fabric of our society," and public schools are a "most vital civic institution for the preservation of a democratic system of government, . . . the primary vehicle for transmitting the values on which our society rests." *Plyler v. Doe*, 457 U.S. 202, 221 (1982) (citations omitted). *See also Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954) (public education is "is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in

preparing him for later professional training, and in helping him to adjust normally to his environment."). "That [schools] are educating the young for citizenship is reason for scrupulous protection of Constitutional freedoms of the individual, if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes." *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 637 (1943). To that end, "vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools. . . . The Nation's future depends upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth out of a multitude of tongues, rather than through any kind of authoritative selection." *Tinker*, 393 U.S. at 512 (citations omitted).

27. *Tinker* leaves no doubt that this requires tolerance of "controversial" opinions or "unpopular" viewpoints. School officials may not suppress student speech based on the "mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint" or "an urgent wish to avoid the controversy which might result from the expression." 393 U.S. at 509, 510. "[S]uppressing the expression of unpopular or controversial opinions—even in the name of avoiding potential in-school disturbances—[is] a violation of the First Amendment unless the school could show that, absent such suppression, the school's orderly operation would be 'materially and substantially' compromised." *Jacobs v. Clark Cty. Sch. Dist.*, 526 F.3d 419, 430 (9th Cir. 2008) (quoting *Tinker*). Accordingly, "student expression may not be suppressed unless school officials reasonably conclude" that the expression "will materially and substantially disrupt the work and discipline of the school." *Morse*, 551 U.S. at 403 (citing *Tinker*).

28. Defendants' suppression of Barnes' speech offends these constitutional standards. Barnes' shirt did not substantially disrupt or materially interfere with the work of the school or the rights of his fellow students. The shirt did not promote or advocate illegal activity; it contained no violent or offensive imagery; nothing on it was obscene, vulgar, or profane. Through his shirt, Barnes sought to comment on a national debate about a serious political and societal issue.

29. Defendants have prevented Barnes from wearing his shirt based on the ideas and message it conveyed, based on the conclusion that other students may find those ideas to be "offensive" or "threatening." Even though school administrators might believe this opinion may

be controversial or unpopular, or that other students may be uncomfortable with it, Barnes has a constitutional right under the First Amendment to express it.  Public school students "may not be confined to the expression of those sentiments that are officially approved," and the First Amendment prohibits school officials from tilting the debate by censoring "feelings with which they do not wish to contend."  *Tinker*, 393 U.S. at 511.

30. The unconstitutionality of the school's actions is strongly confirmed by the fact that the school allows—even encourages and endorses—expression of different viewpoints on the subjects of immigration and national security.  One of Barnes' teachers, for example, prominently displayed a sign in the front of the classroom stating "Sanctuary City, Welcome Home."  (Nevermind that many students, including Barnes, may feel that expression of these ideas "offends" and "threatens" them, or makes them "uncomfortable.")  By muffling one side of the debate while allowing the other side to magnify their voice with a megaphone, Defendants' actions constitute viewpoint-based discrimination.  *Tinker*, 393 U.S. at 511 ("[T]he prohibition of expression of one particular opinion . . . is not constitutionally permissible.").  *See also Rosenberger*, 515 U.S. at 828–29 (regulating speech based on "the specific motivating ideology or the opinion or perspective of the speaker" is a "blatant" and "egregious form of content discrimination").  When a government actor's "suppression of speech suggests an attempt to give one side of a debatable public question an advantage in expressing its views to the people, the First Amendment is plainly offended."  *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 785–86 (1978).

31. For the reasons set forth above, Defendants' enforcement of the Hillsboro School District dress and grooming guidelines against Barnes has violated his First Amendment rights, and the threat of further discipline continues to impose a substantial burden on his freedom of speech and expression.

## CLAIM FOR RELIEF

### VIOLATION OF 42 U.S.C. § 1983 (FIRST AMENDMENT)

32. Plaintiff incorporates here by reference paragraphs 1 through 31, *supra*, as if fully set forth herein.

33.     Defendants, acting under color of state law, have acted to deprive Plaintiff of rights secured by the First Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

34.     As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiff has suffered irreparable harm, including the loss of his constitutional rights, entitling him to declaratory and injunctive relief, and nominal damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Addison Barnes prays for judgment as follows:

1.      Plaintiff respectfully requests that this Court enter a declaratory judgment stating that Defendants have violated the First Amendment to the United States Constitution.

2.      Plaintiff respectfully requests that this Court enter a preliminary and permanent injunction enjoining Defendants from enforcing the Hillsboro School District dress and grooming guidelines in a manner inconsistent with the First Amendment to the United States Constitution, including an order providing that Plaintiff Addison Barnes is allowed to wear his Donald J. Trump Border Construction Co. t-shirt to Liberty High School.

3.      Plaintiff respectfully requests an award of nominal damages against Defendants for violating his constitutional rights pursuant to 42 U.S.C. § 1983 and any other applicable law.

4.      Plaintiff respectfully requests costs of suit, including reasonable attorneys' fees under 42 U.S.C. § 1988 and any other applicable law, and all further relief to which Plaintiff may be justly entitled.

Dated:  May 18, 2018                    LYNCH CONGER MCLANE, LLP

                                        By  /s Ben Becker
                                            JASON CONGER
                                            MICHAEL R. MCLANE
                                            BEN BECKER

                                        BENBROOK LAW GROUP, PC

                                        By  /s Bradley A. Benbrook
                                            BRADLEY A. BENBROOK
                                            STEPHEN M. DUVERNAY

                                            Attorneys for Plaintiff